**The STATE of Ohio, Appellee,**

v.

**WEGMILLER, Appellant.**

[Cite as *State v. Wegmiller* (1993), 88 Ohio App.3d 68.]

Court of Appeals of Ohio,
Summit County.

No. 15776.

Decided May 26, 1993.

*Philip D. Bogdanoff,* Summit County Assistant Prosecuting Attorney, for appellee.

*R. David Briggs,* for appellant.

REECE, Judge.

This case concerns the forfeiture of a 1988 Ford Mustang automobile titled to Ronald Wegmiller, the father of the defendant-appellant, James A. Wegmiller. On July 30, 1991, James, while driving the automobile, led two Akron police officers on a high-speed chase which resulted in serious injuries to the officers when their cruiser struck a utility pole. As a result, James was indicted on two counts of aggravated vehicular assault, R.C. 2903.08, and one count of failure to comply with the signal or order of a police officer, R.C. 2921.331(B). All three counts carried physical harm specifications. On August 15, the state, pursuant to R.C. 2933.41 *et seq.,* filed a petition for forfeiture of the automobile and served notice on James and Ronald.

On January 14, 1992, James pleaded guilty to all charges contained in the indictment. Two days later the state, by certified mail, notified both James and Ronald that a forfeiture hearing would be held on February 28, 1992. Thereafter, James moved to dismiss the state's forfeiture petition, claiming it violated his constitutional rights against double jeopardy. This motion was not ruled upon prior to the forfeiture hearing. At the hearing the state alleged that although the automobile was not titled in James' name, James was the true owner of the automobile.

On May 7, 1992, the court granted the state's forfeiture petition. James appeals from this order, asserting two assignments of error.

### Assignment of Error I

"The trial court erred by denying defendant-appellant's motion to dismiss for reason that the forfeiture petition violated defendant-appellant's rights against double jeopardy."

■ James first contends that the forfeiture violated his constitutional rights against double jeopardy because the forfeiture hearing and resulting order occurred after he had been sentenced for the underlying crimes. James brings to our attention the case of *State v. Casalicchio* (1991), 58 Ohio St.3d 178, 569 N.E.2d 916, wherein the Ohio Supreme Court set aside a forfeiture on double jeopardy grounds.

In *Casalicchio* the state's motion for forfeiture was not filed with the court until three days after the defendant was sentenced for the underlying offenses. *Id.* at 178, 569 N.E.2d at 917. By contrast, in the present case the state moved for forfeiture on August 15, 1991, well before James' sentencing on February 11, 1992. Unlike the defendant in *Casalicchio,* James was aware before his plea and sentencing that the state was pursuing the additional penalty of forfeiture as provided by R.C. 2933.43. As the Supreme Court noted:

"Because the forfeiture of [defendant's] automobile is an additional criminal penalty that the state failed to seek *prior* to sentencing, the forfeiture violates [the Double Jeopardy Clauses of] both the Ohio and federal Constitutions." (Emphasis *sic.*) *Casalicchio,* 58 Ohio St.3d at 183, 569 N.E.2d at 921.

Indeed, R.C. 2933.43(C) requires that a forfeiture hearing not be held until after the defendant has been found guilty of the underlying offense giving rise to the forfeiture:

"If the property seized was determined by the seizing law enforcement officer to be contraband because of its relationship to an underlying criminal offense or administrative violation, *no forfeiture hearing shall be held under this section unless the person pleads guilty to or is convicted* of the commission of, or an attempt or conspiracy to commit, the offense or a different offense arising out of the same facts and circumstances or unless the person admits or is adjudicated to have committed the administrative violation or a different violation arising out of the same facts and circumstances; a forfeiture hearing shall be held in such a case no later than forty-five days *after* the conviction or the admission or adjudication of the violation * * *." (Emphasis added.)

In the present case the state properly sought forfeiture of the automobile prior to James' sentencing. Therefore, we find no violation of James' constitutional rights against double jeopardy.

James' first assignment of error is overruled.

### Assignment of Error II

"The trial court committed prejudicial error by finding that defendant-appellant was the actual owner of the forfeited vehicle without legal or factual basis to support such a finding."

In his second assignment of error, James argues the court erred in finding him to be the automobile's actual owner when it was titled in his father's name. He relies upon R.C. 4505.04, Ohio's certificate of title statute, which begins:

"No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until such person has had issued to him a certificate of title to the motor vehicle * * *."

James argues that by the unequivocal language of this statute there can be no indicia of ownership in an automobile except as evidenced by a certificate of title. We disagree.

In *State v. Shimits* (1984), 10 Ohio St.3d 83, 10 OBR 413, 461 N.E.2d 1278, the defendant was convicted of a felony drug abuse offense. The state petitioned the court for forfeiture of the automobile titled in defendant's name and used by him during the commission of the crime. The defendant's mother and grandmother, contending they were the true owners, filed third-party claims for the return of the vehicle. As does James in the present case, the state in *Shimits* argued that pursuant to R.C. 4505.04, there can be no interest in an automobile except as evidenced by the certificate of title. The issue presented to the court was whether Ohio's title statute, R.C. 4505.04, precluded the third-party claimants from establishing their "equitable" ownership of the forfeited vehicle. In holding that it did not, the court stated:

"Initially, we must conclude that the provisions of R.C. 4505.04 were designed to protect title as between true and fraudulent title claimants and to create an instrument evidencing title to and ownership of motor vehicles. *Hughes v. Al Green, Inc.* (1981), 65 Ohio St.2d 110, 115 [19 O.O.3d 307, 418 N.E.2d 1355]. We do not hold that the legislature intended for said section to be construed to effectively deprive equitable owners of their interest in a vehicle where that vehicle may be forfeited to the state." *Shimits*, 10 Ohio St.3d at 85, 10 OBR at 415, 461 N.E.2d at 1280–1281. See, also, *State v. Lett* (June 3, 1988), Lake App. No. 12–203, unreported, 1988 WL 59830; *In re Akron–Cleveland Auto Rental,*

*Inc.* (C.A.6, 1990), 921 F.2d 659, 662–663 (construing R.C. 4505.04 in light of *Shimits* ).

The impact of *Shimits* is that the court recognized an "equitable" interest in an automobile apart from the certificate of title. While we acknowledge that the equitable interest accrued to the benefit of an innocent third party and against forfeiture, we find the rule of law applicable to the present case. If a third party may, in avoiding a forfeiture, demonstrate an equitable interest in an automobile not evidenced by title, we see no reason why the state cannot demonstrate the existence of such an interest which is then subject to forfeiture.

█ Accordingly, we do not agree that the trial court was precluded from finding James to be the true owner of the automobile even though he was not the title owner. This brings us to the last issue, whether under the facts of this case, the court could find James to be the true owner of the 1988 Ford Mustang.

At the forfeiture hearing the state presented the testimony of Mark Smith, Bill Brannon and David Heiber, respectively James' neighbor, co-worker and friend. All three testified that, to their knowledge, James was the only person to operate the automobile and that he always represented himself as its owner. Heiber further stated that James started driving the automobile in May 1988, just prior to his graduation from high school. Ronald Wegmiller admitted that in ordering the new automobile in March 1988, James picked out the color of the automobile. Matthew S. Brisard, the agent through which the automobile was insured, estimated that if the automobile was titled in James' name the cost of insurance would be $1,485 for six months. By contrast the actual cost of insurance for the automobile, as titled in Ronald's name, was $281 for the six-month period ending December 15, 1991. From this testimony the state contends that Ronald purchased the automobile as a gift for his son and maintained the title in his name to take advantage of the reduced insurance rates.

█ As a reviewing court we will not disturb the judgment of the trial court as contrary to the weight of the evidence where there is some competent, credible evidence supporting the judgment. *Shear v. W. Am. Ins. Co.* (1984), 11 Ohio St.3d 162, 164, 11 OBR 478, 479–480, 464 N.E.2d 545, 547; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. We find, based upon our review of the evidence, that there was some competent, credible evidence from which the trial court could conclude that James was the actual owner of the automobile.

Accordingly, James' second assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

Cook, P.J., and Dickinson, J., concur.