JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Marshalls of MA, Inc. ("Marshalls"), appeals the trial court's decision, which granted judgment in favor of appellee, Jacqueline Abbott. In addition, Abbott asserts a cross-appeal asserting three assignments of error. After a thorough review of the arguments and for the reasons set forth below, we affirm.
 {¶ 2} On July 22, 2002, Abbott filed a complaint against Marshalls in the common pleas court, alleging defamation, assault, battery, malicious prosecution, false imprisonment, and spoliation of evidence. On April 1, 2004, Marshalls filed a motion for summary judgment, arguing that Abbott had not presented sufficient evidence in support of her spoliation claim. On February 7, 2005, Abbott filed a brief in opposition to Marshalls' motion for summary judgment, and Marshalls filed a reply brief on February 28, 2005. On March 11, 2005, Marshalls' motion was denied by the trial court.
 {¶ 3} A jury trial on the matter commenced on July 28, 2005. At the start of the trial, Abbott orally dismissed her claim for defamation. During the trial, Marshalls moved for a directed verdict with respect to Abbott's spoliation claim, which was denied by the trial court.
 {¶ 4} On August 1, 2005, the jury returned a verdict in favor of Abbott, finding Marshalls liable for assault, battery, and spoliation of evidence. The jury did not find in Abbott's favor with respect to her claims of false imprisonment and malicious prosecution. Abbott was awarded $10,000 for assault and $10,000 for battery. In addition, she was awarded $10,000 in compensatory damages and $20,000 in *Page 2 
punitive damages for her spoliation claim. She was also awarded attorney's fees. The trial court journalized the verdict on August 11, 2005.
 Factual History {¶ 5} The incident that gave rise to the present case occurred on November 21, 2001 in Mayfield Heights, Ohio. Abbott testified that she was traveling to meet her fiancé and future in-laws for dinner at their home. Since she was ahead of schedule and had extra time before she was to meet them, she decided to stop at the Marshalls department store in the area in order to return some items. After the return was complete, Abbott realized she still had some time before meeting her fiancé and decided to do some browsing in the store.
 {¶ 6} As she entered the perfume department, she notice a large man in street clothes who appeared to be stocking shelves. The man was later identified as Jason Ladwig, a loss prevention specialist for Marshalls. Abbott recalled Ladwig's presence because she was caught off guard by his presence in the perfume department, and she noticed that, although he was stocking shelves, he was not wearing a Marshalls uniform or name tag. Ignoring Ladwig, Abbott picked up a bottle of Burberry perfume. She knew that one of her clients wore the scent, but was unsure whether the bottle in the box was the same. Not knowing what the fragrance smelled like, Abbott opened the box and sprayed the scent to smell it. She then left the perfume department with the box in her hand and continued browsing in the domestics department. While in the domestics department, she decided not to purchase the perfume and placed it on a shelf. *Page 3 
 {¶ 7} As she attempted to exit the store, Abbott again noticed Ladwig; however, this time he was standing in a check-out line at the front of the store with two shirts in his hand, as though he was going to purchase them. Abbott was confused because at first Ladwig appeared to be a Marshalls' employee and now he was acting as though he was a customer. Abbott testified that she began to feel uneasy at his presence and thought he might be stalking her.
 {¶ 8} Knowing that Ladwig would have to wait in the check-out line for some time and that she would feel much safer in her car, Abbott decided to leave the store. As she walked through the first set of double doors, she noticed that Ladwig was standing on the other side of the doors in front of her. Abbott began to panic because she had thought she had time to safely get to her car before Ladwig checked out, and she was confused as to how he got in front of her. She became frightened and decided to turn around and go back into the store. Before she could make it inside, Ladwig began to pull and tug on her body and her purse, and the automatic doors opened, causing them to stumble into the store. Abbott testified that she was extremely frightened and began screaming to the individuals in the store to call 911 because she was being attacked. Ladwig placed her in a bear hug, causing her to lose control of her bladder. Ladwig continued to handle Abbott in a physically aggressive manner and throughout the entire ordeal, he did not identify himself as a Marshalls' employee.
 {¶ 9} As the struggle continued, Marshalls' employee Crystal Terstage calmly approached Abbott. When Abbott saw Terstage approach, she asked her whether *Page 4 
she knew the man who was attacking her. Terstage informed Abbott that she was the store manager and that she could let Ladwig have her purse. Terstage then escorted Abbott to the loss prevention office of the store. Terstage comforted Abbott as they walked back, while Ladwig walked very quickly ahead of them. Terstage testified that as they walked to the loss prevention office, she never saw Ladwig remove anything from Abbott's purse.
 {¶ 10} Once inside the loss prevention office, Ladwig placed an unopened box of perfume on the table. He asked Abbott if he could search her purse, which was zipped closed. Abbott agreed, stating that there was nothing inside her purse. Ladwig searched the purse, but found nothing. He asked Abbott to sign a piece of paper that he had placed in front of her. Feeling extremely upset from the incident, she started to sign the document, but stopped to ask what it was. When Ladwig informed her that it was a statement of admission for stealing the bottle of perfume, she scratched out her name and refused to sign, stating that she had not stolen anything. Although Ladwig threatened Abbott with arrest if she did not sign the document, she still refused.
 {¶ 11} Abbott testified that at this point, she began to think that the entire incident was a complete misunderstanding. She explained to Ladwig that she had previously opened a bottle of perfume to smell it, but decided not to purchase it and had placed it on a shelf in the domestics department. Now hysterical and crying, Abbott offered to take Ladwig to the domestics department and show him where she *Page 5 
had placed the box of perfume. Ladwig refused to go to the domestics department or to hear her story regarding the opened bottle of perfume.
 {¶ 12} Abbott called her fiancé, Dan D'Augustino, who came to the store to find out what was going on. As he attempted to enter the loss prevention office, Ladwig refused to allow him to enter and only opened the door slightly to allow D'Augustino to see Abbott, stating, "Look, she's alive," before closing the door in D'Augustino's face.
 {¶ 13} When the police arrived, Abbott spoke with them and convinced them to look in the domestics department for the opened box of perfume. The box was discovered there, exactly where Abbott had indicated. Abbott offered to take a lie detector test, but the police refused. D'Augustino offered to pay for the lie detector test and to have the unopened bottle of perfume fingerprinted, but the police and Ladwig refused. Criminal charges were later brought against Abbott. During the time of the incident, Marshalls had a highly sophisticated multiplex video surveillance system that recorded Abbott's entire visit in the store. Footage had been recorded of Abbott while she was in the domestics department, allegedly in a "blind spot" where Ladwig stated she placed the bottle of perfume in her purse; however, Ladwig taped over the footage the very next day, despite Marshalls' policy that all multiplex tapes must be kept for a minimum of 31 days. In addition, Ladwig did not follow store policy by having another store employee witness the recovery of stolen property, and he placed the unopened bottle of perfume back on the shelves where it was eventually sold. *Page 6 
 {¶ 14} Ladwig's account of the events differs from that of Abbott's. Ladwig testified that on the day of the incident, he observed Abbott as she stood in the perfume department and opened a bottle of perfume. He further testified that he then observed her walk to the domestics department where she crouched behind a support column, placed an unopened bottle of perfume in her purse, and then placed the bottle she had previously opened on a shelf behind other merchandise. He testified that when he confronted Abbott as she left the store, she attempted to assault him with her purse, causing him to have to exert force upon her. Ladwig stated that after Abbott was subdued and he, Abbott and Terstage were walking to the loss prevention office, he opened Abbott's purse and recovered an unopened box of perfume. Ladwig admitted that this recovery was not witnessed by other Marshalls employees, as dictated by store policy, and was also outside of the view of the store's surveillance cameras.
 {¶ 15} The matter was tried to a jury and Abbott was found not guilty. Marshalls brings this appeal asserting six assignments of error. In addition, Abbott asserts three cross-assignment of error for our review.
 Marshalls' Assignments of Error {¶ 16} "I. The trial court erred as a matter of law in denying defendant's motions for directed verdict and for judgment notwithstanding the verdict because essential elements of Ms. Abbott's spoliation claim were unsupported by the evidence presented at trial." *Page 7 
 {¶ 17} Marshalls argues that the trial court erred when it denied its motion for directed verdict. More specifically, it asserts a directed verdict was warranted in this case because Abbott failed to provide sufficient evidence supporting the essential elements of her spoliation claim. We do not agree.
 {¶ 18} In State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 19} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979],443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at paragraph two of the syllabus.
 {¶ 20} More recently, in State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court stated the following with regard to "sufficiency" as opposed to "manifest weight" of the evidence:
 {¶ 21} "With respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed.1990) 1433. See, also, Crim.R. *Page 8 
29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Robinson (1955), 162 Ohio St. 486, 55 Ohio Op. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982),457 U.S. 31, 45, 102 [*387] S.Ct. 2211, 2220, 72 L.Ed. 2d 652, 663, citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed. 2d 560." Id. at 386-387.
 {¶ 22} Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case.Cohen v. Lamko (1984), 10 Ohio St.3d 167, 462 N.E.2d 407.
 {¶ 23} The Ohio Supreme Court, in Smith v. Howard-Johnson Ins. Co.,Inc. (1993), 67 Ohio St.3d 28,29, set forth the necessary elements to succeed on a claim of intentional spoliation. These elements include: (1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of the defendant that litigation exists or is probable; (3) willful destruction of evidence by the defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and (5) damages proximately caused by the defendant's acts.
 {¶ 24} It is clear that the first two elements of a spoliation claim were met in this case. Abbott was arrested and prosecuted for the crime of shoplifting. She also *Page 9 
made it quite clear that if she was acquitted of shoplifting, she would pursue civil action against Marshalls.
 {¶ 25} With respect to the third element of spoliation, it is clear that Marshalls, through its employee Ladwig, willfully destroyed evidence with the intent of disrupting Abbott's case. Although there was video surveillance taken of Abbott while she stood in the domestics department and allegedly placed a box of perfume in her purse, Ladwig destroyed that multiplex footage the very next day by taping over it. In doing so, Ladwig also destroyed footage that might have shown him discovering the bottle of perfume that was allegedly found in Abbott's purse. Ladwig taped over this highly important footage despite the fact that it was against store policy to record over any multiplex tape for 31 days, and store policy mandated all surveillance tapes of suspected shoplifting be tagged and placed in a locked box for litigation purposes. Ladwig's actions do not appear to be merely coincidental. In light of the importance of the videotape and the store's strict policy, this is evidence that he wilfully recorded over the tape with the intent of disrupting Abbott's case.
 {¶ 26} Lastly, the fourth and fifth elements of spoliation were also met. The fact that Abbott did not have the video surveillance of the domestic department hindered her case. It left a large question mark and deprived her of the ability to show the jury exactly what had occurred. It is clear that Abbott's inability to properly assert her case was proximately caused by Marshalls' actions.
 {¶ 27} We find that Abbott provided sufficient evidence in support of her claim for spoliation. Accordingly, Marshalls' first assignment of error is overruled. *Page 10 
 {¶ 28} Because Marshalls' second and third assignments of error are substantially interrelated, they will be addressed together.
 {¶ 29} "II. The trial court erred as a matter of law when it denied the motions for directed verdict and judgment notwithstanding the verdict awarding punitive damages with respect to the unfounded spoliation claim.
 {¶ 30} "III. The trial court erred in granting Ms. Abbott and award of attorney's fees."
 {¶ 31} Marshalls argues that the trial court erred when it denied its motions for directed verdict and judgment notwithstanding the verdict with respect to Abbott's spoliation claim and awarded Abbott punitive damages on the claim. Marshalls asserts that Abbott's claim was not supported by sufficient evidence, thus, punitive damages should not have been awarded. In addition, Marshalls contends that because punitive damages were not properly awarded in this case, the trial court's decision awarding attorney's fees was inappropriate. We find no merit in Marshalls' arguments.
 {¶ 32} R.C. 2315.21(C) governs the award of punitive damages in tort actions. It provides in pertinent part:
 {¶ 33} "(C) Subject to division (E) of this section, punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:
 {¶ 34} "(1) The actions or omissions of that defendant demonstrate malice or aggravated or egregious fraud, or that defendant as principal or master knowingly *Page 11 
authorized, participated in, or ratified actions or omission of an agent or servant that so demonstrate.
 {¶ 35} "(2) The trier of fact has returned a verdict or has made a determination pursuant to division (B)(2) or (3) of this section of the total compensatory damages recoverable by the plaintiff from that defendant."
 {¶ 36} The record clearly indicates that Abbott presented sufficient evidence to warrant an award of punitive damages. With respect to Abbott's spoliation claim, through its employee Ladwig, Marshalls demonstrated malice, as required by R.C. 2315.21(C). The overwhelming evidence in the record shows that Ladwig intentionally and maliciously recorded over the multiplex tape that documented Abbott as she stood in the domestics department. This was done despite the fact that it was against store policy. In addition, the jury returned a verdict finding that an award of punitive damages was warranted in this case.
 {¶ 37} Similarly, an award of attorney's fees was also proper. It is well settled that when a party receives an award of punitive damages, they are entitled to reasonable attorney's fees. Although Marshalls argues that punitive damages were not warranted in this case, thus, attorney's fees should not have been awarded, the facts indicate otherwise. The evidence supports a finding that Marshalls acted with actual malice, and Abbott provided sufficient evidence to support an award of punitive damages. Accordingly, the trial court's decision to award reasonable attorney's fees was in line with the relevant law. *Page 12 
 {¶ 38} Abbott clearly presented sufficient evidence to support her spoliation claim, making an award of punitive damages as well as reasonable attorney's fees appropriate. Accordingly, the trial court did not err, and Marshalls' second and third assignments of error are overruled.
 {¶ 39} "IV. The jury's verdict is against the weight of the evidence presented at trial with respect to Ms. Abbott's spoliation claim because Ms. Abbott failed to present any evidence to support the essential elements of her claim."
 {¶ 40} Marshalls argues that the jury's verdict was against the manifest weight of the evidence. Specifically, it asserts that Abbott did not present competent, credible evidence to support the essential elements of her spoliation claim.
 {¶ 41} It is well established that when some competent, credible evidence exists to support the judgement rendered by the trial court, an appellate court may not overturn that decision unless it is against the manifest weight of the evidence. Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80. The knowledge a trial court gains through observing the witnesses and the parties in any proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record.In re Satterwhite, Cuyahoga App. No. 77071, 2001-Ohio-4137, citingTrickey v. Trickey (1952), 158 Ohio St. 9, 13. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. Seasons CoalCo., supra. As the Ohio Supreme Court has stated, "it is for the trial court to resolve *Page 13 
disputes of fact and weigh the testimony and credibility of the witnesses." Bechtol v. Bechtol (1990), 49 Ohio St.3d 21.
 {¶ 42} The jury returned a verdict finding Marshalls liable for spoliation. As stated previously, Abbott's claim for spoliation was supported by competent and credible evidence. At trial, Abbott presented sufficient evidence to support each of the required elements of spoliation, warranting a jury verdict in her favor.
 {¶ 43} The jury's verdict finding Marshalls liable for spoliation was not against the manifest weight of the evidence. Accordingly, Marshalls' fourth assignment of error is overruled.
 {¶ 44} "V. Alternatively, should this court determine that attorney fees were proper, the trial court erred in calculating the amount of the attorney's fees award."
 {¶ 45} Marshalls argues that the trial court abused its discretion when it calculated Abbott's award of attorney's fees. More specifically, it asserts that attorney's fees should have been limited to the original contingency fee agreement entered into between Abbott and her attorneys. In addition, Marshalls contends that the trial court awarded Abbott attorney's fees on causes of action upon which she did not prevail.
 {¶ 46} To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 50 OBR 481,450 N.E.2d 1140.
 {¶ 47} "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations." State v. Jenkins *Page 14 
(1984), 15 Ohio St.3d 164, 222, citing Spalding v. Spalding (1959), 355 Mich. 382, 384-385. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Id.
 {¶ 48} Although Marshalls argues that attorney's fees should have been limited to the contingency fee that Abbott and her attorneys had originally agreed to, the law on the issue is not so stringent. The standard of review with respect to attorney's fees is abuse of discretion. Thus, after a proper review of evidence relating to fees, the trial court may exercise its discretion in determining an appropriate award.
 {¶ 49} In this case, the litigation process spanned a period of three years and was strongly contested by each side. In light of the extensive work that was required and the length of the litigation process, the trial court determined that limiting attorney's fees to the original contingency fee agreement would not have been reasonable. After reviewing records submitted by Abbott's attorneys, the trial court determined that Abbott's attorney, David Corrado, spent 245.6 hours litigating the case, and her attorney, Robert Somogyi, spent 166.9 hours litigating the matter. The trial court also determined that an hourly rate of $160 and $150, respectively, was reasonable for similar legal services in the Cleveland area. In addition, the trial court specifically limited the attorney's fees awarded to Abbott's successful claims. Abbott's attorneys provided the court with a description of tasks that supported their *Page 15 
billing statements, and the trial court's award was made in accordance with that documentation.
 {¶ 50} We do not find that the trial court's actions were unreasonable, arbitrary, or unconscionable when it awarded attorneys fees to Abbott. Accordingly, the trial court did not abuse its discretion, and Marshalls' fifth assignment of error is overruled.
 {¶ 51} "VI. The spoliation claim should not have been submitted to a jury because Marshalls is entitled to summary judgment due to Ms. Abbott's failure to present evidence of spoliation."
 {¶ 52} Marshalls asserts that, because Abbott failed to present sufficient evidence on the issue of spoliation, the trial court erred in submitting the spoliation claim to the jury, and Marshalls was entitled to summary judgment. We do not agree.
 {¶ 53} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267. *Page 16 
 {¶ 54} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330,106 S.Ct. 2548, 91 L.Ed. 2d 265; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.
 {¶ 55} In Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107,662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of therecord which demonstrate the absence of a genuine issue of fact ormaterial element of the nonmoving party's claim." Id. at 296. (Emphasis in original.) The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 56} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if *Page 17 
reasonable minds could find for the party opposing the motion."Saunders v. McFaul (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24;Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741,607 N.E.2d 1140.
 {¶ 57} We find no merit in Marshalls' argument that summary judgment was warranted on Abbott's spoliation claim. Abbott provided more than sufficient evidence to support her claim for spoliation, showing that genuine issues of material fact remained to litigate at trial. Because Abbott's claim was not lacking in merit, the trial court properly denied Marshalls' motion for summary judgment. Summary judgment was not warranted on the issue of spoliation. Accordingly, Marshalls' fifth assignment of error is overruled.
 Jacqueline Abbott's Cross-Assignments of Error {¶ 58} "I. The trial court erred in slicing the hourly rates of Ms. Abbott's counsel and determining that counsel's actual hourly rate was unreasonable."
 {¶ 59} Abbott argues that the trial court abused its discretion when it determined that the attorney's fees claimed by her counsel were unreasonable. More specifically, she asserts that sufficient evidence was presented to support her request for attorney's fees, thus, the trial court's decision lowering the requested fees was in error.
 {¶ 60} As previously stated, to constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. Blakemore, supra. *Page 18 
 {¶ 61} Abbott argues that her attorney, David Corrado, should be awarded $275 per hour, and her attorney, Robert Somogyi, should be awarded $225 per hour. Although Abbott did provide an expert witness who testified that the hourly rates claimed by Abbott's counsel were reasonable, the trial court considered many factors, including the experience of counsel, the subject matter of litigation, as well as the prevailing market rates in the community before it determined reasonable hourly rates.
 {¶ 62} We do not find that the trial court's actions were unreasonable, arbitrary, or unconscionable when it lowered the hourly rate requested by Abbott's attorneys. Accordingly, the trial court did not abuse its discretion, and Abbott's first cross-assignment of error is overruled.
 {¶ 63} "II. The trial court erred in denying paralegal fees and expenses as part of the attorneys' fees."
 {¶ 64} In her second cross-assignment of error, Abbott argues that the trial court abused its discretion when it denied her request for paralegal fees and expenses. She asserts that this court's holding inJackson v. Brown (1992), 83 Ohio App.3d 230, 232, supports the award of fees for paralegals, thus, the trial court's decision was in error.
 {¶ 65} In Jackson, this court stated that fees for law clerks and paralegals could be recompensed; however, it did not hold it to be an abuse of discretion to fail to include these costs in an award of attorney's fees. After close review of Abbott's arguments, this court does not find that the trial court's actions were unreasonable, *Page 19 
arbitrary, or unconscionable when it denied Abbott's request for paralegal fees and expenses. Accordingly, the trial court did not abuse its discretion, and Abbott's second cross-assignment of error is overruled.
 {¶ 66} "III. The trial court erred in denying the plaintiff's request for prejudgment interest."
 {¶ 67} In her last cross-assignment of error, Abbott argues that the trial court abused its discretion when it denied her motion for prejudgment interest. She specifically asserts that her motion met all of the requirements established by R.C. 1343.03(C), thus, it should have been granted.
 {¶ 68} R.C. 1343.03(C), the statute that governs prejudgment interest, states in pertinent part:
 {¶ 69} "(C)(1) If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed as follows:
 {¶ 70} "(a) In an action in which the party required to pay the money has admitted liability in a pleading, from the date the cause of action accrued to the date on which the order, judgment, or decree was rendered; *Page 20 
 {¶ 71} "(b) In an action in which the party required to pay the money engaged in the conduct resulting in liability with the deliberate purpose of causing harm to the party to whom the money is to be paid, from the date the cause of action accrued to the date on which the order, judgment, or decree was rendered."
 {¶ 72} In the present case, although Abbott submitted a motion that was in compliance with the governing rule, she failed to file the motion within a timely fashion. Abbott argues that the February 7, 2006 award of attorney's fees was the final judgment entry from which the filing deadline should toll; however, the rule is devoid of such language. R.C.1343.03(C) specifically provides that the right to file a motion for prejudgment interest is triggered when the court has rendered a judgment, decree, or order for the payment of money. On August 1, 2005, a verdict was rendered by the trial court. On August 11, 2005, the trial court rendered a judgment ordering Marshalls to compensate Abbott in the amount of $10,000 for assault, $10,000 for battery, $10,000 in compensatory damages, and $20,000 in punitive damages. It is clear from this brief time line, that the triggering event was August 11, 2005. As stated in R.C. 1343.03(C), Abbott had until August 25, 2005 to file her motion; however, she did not file it until August 26, 2005, beyond the 14-day filing deadline.
 {¶ 73} In addition, Abbott argues that Civ.R. 6(E) allotted her an additional three days to file her motion; however, Civ.R. 6(E) does not apply under these circumstances. Civ.R. 6(E) provides: *Page 21 
 {¶ 74} "(E) Time: additional time after service by mail. Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice orother paper upon him and the notice or paper is served upon him bymail, three days shall be added to the prescribed period. This subdivision does not apply to responses to service of summons under Rule 4 through Rule 4.6." (Emphasis added.)
 {¶ 75} Civ.R. 6(E) specifically applies to an action that is to be taken after the service of summons. In the present case R.C. 1343.03(C) clearly states that the triggering event for filing a motion for prejudgment interest is the date of the judgment entry. Because the triggering event in Civ.R. 6(E) is service of the summons, the three-day extension allowed by the rule does not apply in this case.
 {¶ 76} We do not find that the trial court's actions were unreasonable, arbitrary, or unconscionable when it denied Abbott's motion for prejudgment interest as untimely. Accordingly, the trial court did not abuse its discretion, and Abbott's third cross-assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 22 
 MARY EILEEN KILBANE, J., and CHRISTINE T. McMONAGLE, J., CONCUR *Page 1