**ESTATE OF BEAVERS et al., Appellees,**

v.

**KNAPP et al., Appellants.**

[Cite as *Estate of Beavers v. Knapp,* 175 Ohio App.3d 758, 2008-Ohio-2023.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–612.

Decided April 29, 2008.

760

762

Cooper & Elliott, L.L.C., Charles H. Cooper Jr., and Rex H. Elliott, for appellee estate of Robert L. Beavers.

Hollern & Associates and Edwin J. Hollern, for appellants.

Weston Hurd Curley Patterson & Bush, L.L.P., and Kevin R. Bush, for appellee Auto–Owners Insurance Company.

———————

FRENCH, Judge.

{¶ 1} Defendants-appellants, William E. Knapp and Rush Transportation & Logistics, appeal from a final judgment of the Franklin County Court of Common Pleas, awarding attorney fees and expenses in favor of plaintiff-appellee, the estate of Robert L. Beavers Jr., and incorporating earlier entries, including the entry of judgment on a jury verdict in favor of appellee and the denial of appellants' motion for remittitur and/or a new trial pursuant to Civ.R. 59 and/or judgment notwithstanding the verdict pursuant to Civ.R. 50(B) and/or motion for relief from judgment pursuant to Civ.R. 60(B).

{¶ 2} This action arises out of an October 9, 2001 motorcycle-truck collision that resulted in the death of Robert L. Beavers Jr. Knapp, who was newly

employed as a truck driver by Rush, was traveling from the Rush facility in Dayton, Ohio to Columbus, where he was scheduled to pick up a load for delivery in New York. In Columbus, Knapp arrived at the intersection where Lockbourne Road forms a "T" with Groveport Road. After beginning to execute a left turn from Lockbourne Road onto Groveport Road, Knapp saw Beavers driving a motorcycle toward him on Groveport Road.

{¶ 3} Beavers applied his brakes and attempted to stop, but lost control of the motorcycle, which went down on its side and slid toward Knapp's truck. Beavers tumbled from the motorcycle, also toward Knapp's truck. In his mirror, Knapp saw the motorcycle go down and Beavers fall from the motorcycle. Rather than stop, Knapp accelerated and continued on, stating: "I just kind of panic[ked] and said, 'Oh, my God.' I panicked and I took off." As he "took off," Knapp felt a bump when his rear wheels went up and over something. Reginald Battle, a motorist who was behind Knapp on Lockbourne Road at the time of the accident, testified that Knapp's trailer first hit the motorcycle and then hit Beavers. When Knapp hit Beavers, the truck crushed Beavers's torso, lacerating his heart and filling his thorax with blood. Beavers died as a result of the accident.

{¶ 4} Despite seeing Beavers tumble from his motorcycle and feeling the truck hit something, Knapp decided to continue on. Even though it occurred to him that he probably should not be leaving the scene of the accident, Knapp still intended to pick up his load and make his delivery to New York. Further down Groveport Road, Knapp pulled into a freight yard and exited his truck. Having followed him, Battle confronted Knapp, who denied any knowledge of the accident. Battle then returned to the accident scene and provided the police with Knapp's license plate number.

{¶ 5} In the meantime, Knapp continued on to the shipper to collect his load. After the shipper loaded Knapp's trailer, Knapp asked the shipper to record an earlier time on his bill of lading. Knapp thought that the earlier time might provide him an alibi for the time of the accident. Knapp then proceeded to New York to complete his delivery.

{¶ 6} The following day, Rick Smith, Rush's Director of Operations and Safety, learned of the accident from an article in The Columbus Dispatch and contacted the Columbus Police Department. After verifying that Knapp had been in the area at the time of the accident, Smith ordered the Rush dispatcher to contact Knapp and call him back to Dayton. When Smith spoke to Knapp after he returned to Dayton, Knapp denied any involvement in the accident. Nevertheless, Smith ordered Knapp to attend a meeting with the police detective investigating the accident. Although he initially denied any involvement in the accident to the police, Knapp eventually confessed. After Rush learned of Knapp's confession, it immediately terminated Knapp's employment.

{¶ 7} Appellee filed suit against appellants on December 18, 2001, alleging claims of negligence, wrongful death, and respondeat superior. In amended pleadings, appellee added claims of negligent hiring against Rush and for punitive damages against both appellants. After an eight-day jury trial, the jury returned a verdict on June 11, 2003. The jury found in favor of appellee and awarded compensatory damages of $767,600. The jury also awarded punitive damages of $500,000 against Knapp and $250,000 against Rush. In addition to its general verdict, the jury returned responses to a series of interrogatories. In one interrogatory, the jury found that appellee was entitled to recover attorney fees.

{¶ 8} After trial, both appellee and appellants submitted proposed judgment entries for the trial court's consideration. Ultimately, on June 30, 2003, the trial court filed appellee's proposed judgment entry. After setting forth judgment in accordance with the jury verdict, the judgment entry states, "Under the doctrine of *respondeat superior,* defendant Rush Transportation is liable for the full award of $1,517,600.00." The judgment entry does not mention attorney fees.

{¶ 9} On July 14, 2003, appellants filed a motion for a new trial, for remittitur, for judgment notwithstanding the verdict, and/or for relief from judgment, which the trial court denied on October 15, 2003. The trial court also scheduled a hearing to establish the amount of appellee's attorney fees and expenses.

{¶ 10} On October 29, 2003, Rush's primary insurer voluntarily paid the full amount of the compensatory damages judgment, together with any pre- and postjudgment interest.

{¶ 11} On October 31, 2003, appellants filed their first notice of appeal. At approximately the same time, Knapp filed a petition for Chapter 7 bankruptcy. Upon notice of Knapp's bankruptcy petition, this court stayed appellants' appeal on November 18, 2003.

{¶ 12} On January 15, 2004, the bankruptcy court issued a stipulation and agreed order modifying the automatic stay to permit the trial court to conduct an evidentiary hearing to determine attorney fees, expenses, and costs and to permit appellee to litigate claims against appellants' insurers to satisfy the judgment against appellants. On July 23, 2004, after Knapp was discharged in bankruptcy, the trial court scheduled a hearing on attorney fees. On August 19, 2004, before the scheduled hearing, appellants filed a complaint for a writ of prohibition in the Supreme Court of Ohio, arguing that the trial court lacked jurisdiction to proceed with the attorney fees hearing. The Supreme Court dismissed appellants' complaint on October 13, 2004, and a magistrate conducted the attorney-fees hearing on March 18, 2005. While the parties awaited the magistrate's decision, this court dismissed appellants' first appeal sua sponte because the trial court had not yet determined the amount of attorney fees and expenses to which appellee was entitled.

{¶ 13} On December 8, 2005, the magistrate, who had since been sworn in as a common pleas court judge, issued his decision on attorney fees and expenses. Appellants filed objections to the magistrate's decision. Because a sitting judge had issued the magistrate's decision, the parties agreed to have the trial judge issue a new decision on attorney fees, based upon the hearing transcript. On July 3, 2007, the trial court issued its decision on attorney fees and expenses, essentially adopting the magistrate's decision and awarding attorney fees in the amount of $239,563.75 and expenses in the amount of $29,944.92, for a total award of $269,508.67. The trial court's award of attorney fees resolved all outstanding issues and rendered all of the trial court's previous decisions and entries final and appealable. Appellants filed their second notice of appeal on July 31, 2007.

{¶ 14} In this appeal, appellants set forth nine assignments of error relating to the trial court's judgment for punitive damages and attorney fees, as follows:

I. The trial court committed prejudicial error in permitting the issue of punitive damages to be included in the trial.

II. The trial court erred by holding [Rush] responsible for the punitive damages attributed to [Knapp] when the jury clearly made separate awards.

III. The award of punitive damages against [Rush] is against the manifest weight of the evidence.

IV. The trial court erred by failing to follow the mandate of Civ.R. 49(B) when entering judgment for plaintiff.

V. The court committed error prejudicial to appellants by not allowing into evidence [Beavers'] prior alcohol related convictions and alcohol related rehabilitation.

VI. The trial court erred by permitting the jury to consider an award of attorney's fees where punitive damages were not appropriate.

VII. The trial court did not have jurisdiction to award attorney's fees or expenses.

VIII. The trial court erred by awarding plaintiff attorney's fees for the probate work undertaken by appellee's counsel to resolve an unrelated dispute over the control of the wrongful death estate.

IX. The trial court abused its discretion and violated the permanent injunction issued by the bankruptcy court with respect to any judgment or award of fees or expenses against [Knapp].

We will address each of appellants' assignments of error in turn.

■ {¶ 15} By their first assignment of error, appellants contend that the trial court erred by including the issue of punitive damages in the trial. Particularly, appellants argue that punitive damages are not recoverable in a wrongful-death action, that appellee did not establish a claim for pecuniary loss prior to Beavers's

death to support an award of punitive damages, and that the record lacked evidence essential to hold either Knapp or Rush liable for punitive damages.

{¶ 16} First, it is undisputed that a plaintiff may not recover punitive damages on a wrongful-death claim. As the Supreme Court of Ohio clearly held in *Rubeck v. Huffman* (1978), 54 Ohio St.2d 20, 23, 8 O.O.3d 11, 374 N.E.2d 411:

> Since punitive damages are "assessed over and above that amount adequate to compensate an injured party" (*Ranells v. Cleveland* [1975], 41 Ohio St.2d 1, 7 [70 O.O.2d 1, 321 N.E.2d 885]), they are, by definition, not available in a wrongful-death action.

However, a plaintiff may recover punitive damages as part of a survivorship claim, even if that claim is coupled with a claim for wrongful death. The Supreme Court has stated:

> It is established law in this state that one may obtain punitive damages for personal injury or property loss caused by "'intentional, reckless, wanton, willful and gross acts'" or by malice "inferred from conduct and surrounding circumstances." *Columbus Finance v. Howard* (1975), 42 Ohio St.2d 178, 184 [71 O.O.2d 174, 327 N.E.2d 654]. Moreover, the right to such damages continues even when the person so injured has died and the personal injury or property loss claim is pursued by the representative of his estate under R.C. 2305.21.

Id. In *Rubeck*, a case arising out of a fatal, head-on automobile collision, the Supreme Court stated that the award of punitive damages should be upheld if the decedent's representative alleged and proved that, before he died,[1] the decedent had suffered personal injury or property loss as a result of the collision.

{¶ 17} The Third District Court of Appeals addressed the requirement of pre-death personal injury or property damage as a prerequisite for recovery of punitive damages in *Gollihue v. Consol. Rail Corp.* (1997), 120 Ohio App.3d 378, 697 N.E.2d 1109. There, the decedent died after a train collided with his vehicle. Along with a wrongful-death claim, the administrator of the decedent's estate asserted a survivorship claim for the destruction of the decedent's clothing and eyeglasses totaling $100. The court rejected the defendant's argument that the minimal property damage was insufficient to warrant a jury instruction on punitive damages, holding: "Regardless of the value of the property lost, the jury was entitled to consider whether punitive damages * * * were appropriate." Id. at 407, 697 N.E.2d 1109. See also *Wightman v. Consol. Rail Corp.* (1994), 94

---

1. Ultimately, the Supreme Court reversed the punitive-damages award. Finding no proof that the decedent suffered property loss or personal injury before he died, the court did not consider whether the defendant's conduct otherwise met the requirements for punitive damages. See id. at 24, 8 O.O.3d 11, 374 N.E.2d 411, fn. 4.

Ohio App.3d 389, 407, 640 N.E.2d 1160 (R.C. 2315.21 does not require substantial actual damages to support an award of punitive damages).

{¶ 18} Here, appellee undisputedly asserted a survivorship claim for personal injuries and property loss suffered by Beavers prior to his death. Appellee presented evidence regarding damage to Beavers's clothing and motorcycle in addition to evidence of personal injuries, including scrapes and abrasions. Beavers's fiancée, Chrissy Miller, testified that the motorcycle was damaged in the amount of $4,875 and that Beavers was wearing a leather jacket, with a replacement value of $300, and cowboy boots, purchased for $100, that were damaged in the accident. Like the trial court, we determine that the record contained evidence from which a reasonable jury could conclude that Beavers incurred such personal injuries and property damages before he died. Thus, we hold that the record contained evidence of property damage and personal injuries supporting a survivorship claim.

■■ {¶ 19} Appellants have argued that the jury should not have been permitted to consider damage to the motorcycle as the basis for a survivorship claim because the motorcycle was titled in Miller's name. The trial court rejected appellants' argument, finding clear and convincing evidence that Miller gave the motorcycle to Beavers as an inter vivos gift. We find no error in that determination. A certificate of title does not definitely determine ownership of a gifted automobile. *Howard v. Himmelrick*, Franklin App. No. 03AP–1034, 2004-Ohio-3309, 2004 WL 1405293, ¶ 10, citing *Abney v. W. Res. Mut. Cas. Co.* (1991), 76 Ohio App.3d 424, 428, 602 N.E.2d 348, and *State v. Wegmiller* (1993), 88 Ohio App.3d 68, 72, 623 N.E.2d 131. In *Howard,* this court found sufficient evidence to demonstrate a gift of an automobile where evidence had established that the decedent wanted to buy a car for his girlfriend, had purchased the car his girlfriend selected, did not drive the car, and referred to the car as his girlfriend's, despite holding title in his own name due to a financing arrangement. Similar evidence here supports the trial court's finding that Miller had gifted the motorcycle to Beavers. Miller testified that in September 2001, approximately two weeks before the accident, she purchased the motorcycle for Beavers and had not had the opportunity to transfer the title to Beavers. Miller also testified that she has never ridden motorcycles and considered Beavers the owner of the motorcycle. The record also contained evidence that Beavers described the motorcycle as his own.

{¶ 20} Because a survivorship claim was properly before the trial court, and because a jury may award punitive damages in relation to such a claim, the issue of punitive damages was properly before the trial court. Accordingly, we shift our attention to the requirements for an award of punitive damages and to the evidence in the record supporting an award here.

{¶ 21} Under Ohio law, a court may award punitive damages in a tort action only upon a finding of actual malice, fraud, oppression, or insult on the part of the defendant. R.C. 2315.21; *Estate of Schmidt v. Derenia*, 158 Ohio App.3d 738, 2004-Ohio-5431, 822 N.E.2d 401, ¶ 10. The applicable version of R.C. 2315.21 provides:

> (B) Subject to division (D) of this section, punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:

> (1) The actions or omissions of that defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate;

> (2) The plaintiff in question has adduced proof of actual damages that resulted from actions or omissions as described in division (B)(1) of this section.

Accordingly, "punitive damages may be awarded in tort actions in which actual damages have been proven and the actions of the defendant involve malice." *Gollihue*, 120 Ohio App.3d at 400, 697 N.E.2d 1109.

{¶ 22} Because R.C. 2315.21 does not define malice, the Supreme Court of Ohio applies the definition of actual malice set forth in *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus, to punitive-damage claims. *Malone v. Courtyard by Marriott Ltd. Partnership* (1996), 74 Ohio St.3d 440, 659 N.E.2d 1242. Thus, for purposes of punitive damages, malice is "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis sic.) *Preston* at syllabus. Only the second type of malice articulated in *Preston* is applicable to our discussion here, and the trial court appropriately only instructed the jury that it could award punitive damages based on a finding of "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."

{¶ 23} Appellants contend that the only basis for concluding that Knapp had acted with a conscious disregard for the rights and safety of others was Knapp's decision to leave the scene of the accident, a decision that appellants argue occurred after Beavers sustained any predeath personal injury or property loss. Thus, appellants maintain that punitive damages against Knapp were inappropriate because Beavers suffered no personal injury or property damage prior to his death as a result of malicious conduct by Knapp. Despite appellants' assertion that a decedent's predeath personal injury or property damage must result directly from the conduct that demonstrated a conscious disregard for the safety

of others before punitive damages are available, Supreme Court of Ohio case law suggests otherwise.

{¶ 24} In *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, the Supreme Court of Ohio affirmed an award of punitive damages against an orthopedic surgeon in an action for medical malpractice, wrongful death, and survivorship, maintained by the decedent-patient's estate. The facts in *Moskovitz* involved the surgeon's failure to timely diagnose and treat a malignant tumor on the decedent's leg and subsequent alteration of records to conceal his malpractice. In connection with the survivorship claim, the jury awarded $3 million in punitive damages based on the doctor's alteration, falsification, or destruction of medical records. The court of appeals vacated the punitive damages award after determining that the surgeon's act of altering and destroying records did not directly harm the decedent. In doing so, the appellate court held that appellant was required to prove " 'a harm distinct from the medical negligence claim and attributable solely to the alleged alteration of medical records' " before punitive damages were warranted. Id. at 649, 635 N.E.2d 331, quoting *Moskovitz v. Mt. Sinai Med. Ctr.* (Jan. 7, 1993), Cuyahoga App. No. 60464, 1993 WL 4549. The Supreme Court of Ohio reversed.

{¶ 25} While stating that "compensable harm stemming from a cognizable cause of action must be shown to exist before punitive damages can be considered," the Supreme Court held that the appellant's award of compensatory damages in the survivorship claim for medical negligence formed the necessary foundation for a punitive damages award. *Moskovitz*, 69 Ohio St.3d at 650, 635 N.E.2d 331. The Supreme Court imposed no requirement that the malicious act necessary to sustain an award of punitive damages independently cause compensable harm. Indeed, the court stated that such a rule would "make no sense." Id. at 651, 635 N.E.2d 331. The court held that the surgeon's alteration of records "exhibited a total disregard for the law and the rights of [the patient] and her family" and "was inextricably intertwined with the claims advanced by appellant for medical malpractice, and the award of compensatory damages on the survival claim formed the necessary predicate for the award of punitive damages based upon the alteration of medical records." Id. at 651–652, 635 N.E.2d 331.

{¶ 26} Subsequently, the Supreme Court decided *Cappara v. Schibley* (1999), 85 Ohio St.3d 403, 709 N.E.2d 117, a case arising out of an automobile accident from which the defendant fled. Because he believed the defendant was under the influence of alcohol at the time of the accident, the plaintiff sought both compensatory and punitive damages. The defendant admitted negligence, but denied that he had exhibited a conscious disregard for the rights and safety of others, sufficient to warrant the imposition of punitive damages. Upon a jury

verdict, the trial court entered judgment in favor of the plaintiff for both compensatory and punitive damages.

{¶ 27} In *Cappara,* the Supreme Court reviewed issues regarding the admission of evidence at trial, including evidence of the defendant's subsequent driving-under-the-influence ("DUI") convictions. The Supreme Court held that evidence of the defendant's subsequent DUI convictions was highly prejudicial and was inadmissible to establish the defendant's state of mind at the time of the accident. In contrast, the Supreme Court stated that evidence of the defendant's fleeing from the accident scene and subsequent failure to disclose his involvement in the accident was admissible to establish a punitive-damages award. The court likened the defendant's fleeing and failure to disclose to the surgeon's alteration of records in *Moskovitz* and held, "These actions following the accident were directly related to or the result of [the defendant's] negligence" and admissible for the purpose of establishing actual malice. *Cappara* at 407, 709 N.E.2d 117. See also *Pelkowski v. Nussbaumer* (Feb. 8, 1993), Stark App. No. CA–8928, 1993 WL 50723, quoting *Troyer v. Horvath* (1983), 13 Ohio App.3d 155, 157, 13 OBR 189, 468 N.E.2d 351 (rejecting argument that postcollision behavior cannot support a punitive damage award because such behavior did not cause the plaintiff's injuries and stating, " 'Punitive damages are not awarded for the incident of injury, but are awarded due to the aggravated circumstances apart from or surrounding the injury or the actions of the party causing the injury' ").

{¶ 28} Appellants contend that the *Cappara* analysis applies only if the defendant's fleeing and subsequent failure to disclose actually caused the plaintiff property damage or personal injury. We disagree. There is no suggestion in *Cappara* that the defendant's fleeing and failure to disclose his involvement in the accident caused property damage or personal injury separate and apart from the collision itself. Here, appellants concede that Knapp's actions in fleeing the scene and altering his records to create an alibi would be admissible to establish entitlement to punitive damages had Beavers not died. Beavers's claims for personal injury and property damage remain viable through a survivorship action. We see no rationale for not affording appellee the opportunity to present the same evidence that appellants admit would be relevant and admissible had Beavers survived.

{¶ 29} Moreover, even if we were to agree that appellee must establish that Beavers suffered personal injury or property damage as a direct result of Knapp's fleeing, we find sufficient evidence in the record to satisfy that requirement. Although Knapp was not present for trial, portions of his deposition testimony were read into the record. Significantly, Knapp testified that he decided to leave the scene of the accident before he ran over either Beavers or the motorcycle. Knapp stated that when he saw the motorcycle sliding and

Beavers tumbling toward the trailer, he "just kind of panic[ked]." He said, " 'Oh, my God.' I panicked and I took off." According to Knapp, he felt a bump and realized that his rear wheels were going up and over something after he panicked and took off. Thus, Knapp decided to leave the scene after witnessing Beavers tumble from his motorcycle, but before hitting either Beavers or his motorcycle. Witness Battle testified that Knapp hit the motorcycle before hitting Beavers. He testified:

> The bike went out from under him. * * *
>
> The motorcycle went underneath—slid and went underneath the rear tires of— the left tire, left two tires, of the rear of the trailer. And Mr. Beavers couldn't break his fall, so he kind of rolled, and the tires, rear tires, his head went up under the rear tires, the rear left tires, and you could see the trailer go up.

When asked whether he saw the trailer rise in a bump over Beavers, Battle responded: "Actually, the motorcycle, but the thing that stayed in my mind was when it hit Mr. Beavers." From Knapp and Battle's testimony, a jury could find that Knapp caused Beavers' predeath personal injury and/or property damage in the course of fleeing from the scene of the accident.

 {¶ 30} Lastly, with respect to appellants' first assignment of error, we hold that the evidence presented at trial justified an instruction on punitive damages, at least as to Knapp. "[A]n award of punitive damages based on conscious disregard malice requires 'a positive element of conscious wrongdoing * * *. This element has been termed conscious, deliberate or intentional. It requires the party to possess knowledge of the harm that might be caused by his behavior.' " *Malone,* 74 Ohio St.3d at 446, 659 N.E.2d 1242, quoting *Preston,* 32 Ohio St.3d at 335, 512 N.E.2d 1174. In other words, Knapp must have known of the threat to Beavers, and the evidence must demonstrate that Knapp's actions constituted more than mere negligence and contained a positive element of conscious wrongdoing. See *Estate of Schmidt,* 158 Ohio App.3d 738, 2004-Ohio-5431, 822 N.E.2d 401, at ¶ 23. Here, we find sufficient evidence from which the jury could have made such a determination.

 {¶ 31} Knapp saw Beavers fall from the motorcycle and tumble toward his truck. Knapp admitted that as he saw Beavers coming toward him, he could have stopped. Instead, however, Knapp panicked, accelerated, and left the scene. Moreover, in the process of leaving the scene, Knapp knew that he had hit something when he felt the truck's rear wheels raise. Despite his awareness of Beavers's fall, knowledge of Beavers and the motorcycle sliding toward the trailer, and the realization that he had hit something, Knapp decided to continue toward his destination. Additionally, Knapp admitted thinking that he should not be leaving the scene of the accident. From such evidence, the jury could have found a positive element of conscious wrongdoing by Knapp. Furthermore,

similar to the evidence the Supreme Court found relevant to prove actual malice in *Cappara,* evidence of Knapp's request for the shipper to misstate his arrival time on his delivery documents, in hopes of creating an alibi, was relevant to the determination of malice.

{¶ 32} For the foregoing reasons, we conclude that the trial court did not err by including the issue of punitive damages, at least as to Knapp, in the trial. Accordingly, we overrule appellants' first assignment of error.

{¶ 33} Appellants' second and third assignments of error concern the judgment for punitive damages against Rush. In essence, the punitive-damages award against Rush can be divided into two components: (1) $250,000 that the jury specifically awarded against Rush and (2) the trial court's imposition of vicarious liability, based on the doctrine of respondeat superior, against Rush for the $500,000 in punitive damages that the jury awarded against Knapp. Appellants' third assignment of error concerns the entire punitive-damages award against Rush, an award appellants argue is against the manifest weight of the evidence. Appellants' second assignment of error concerns the trial court's imposition of vicarious liability on Rush for the $500,000 in punitive damages that the jury awarded specifically against Knapp. To the extent that both assignments of error concern the validity of punitive damages against Rush, we address them together.

{¶ 34} Pursuant to R.C. 2315.21, punitive damages are not recoverable against Rush unless Rush's actions or omissions demonstrated malice or unless Rush, as principal or master, authorized, participated in, or ratified actions or omissions by Knapp that demonstrated malice. Over the objection of appellants' counsel, the trial court instructed the jury on two methods by which it could award punitive damages against Rush:

> You may decide that the defendant, Rush Transportation, is liable for punitive damages if you find by clear and convincing evidence that its acts or failure to act demonstrated a conscious disregard for the rights and safety of other persons that has greater—that has a great probability of causing substantial harm, and that the plaintiff has presented proof of actual damages that resulted from those actions or failure to act.

> In the alternative, you may decide that the defendant, Rush Transportation, is liable for punitive damages if you find by clear and convincing evidence that William Knapp demonstrated a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm, and that such actions or failure to act by William Knapp occurred during the course and scope of his employment with Rush Transportation, and if the plaintiff has

presented proof of actual damages that resulted from those actions or failure to act.

{¶ 35} The first instruction is consistent with the Supreme Court of Ohio's definition of malice as including "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston*, 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. Although the jury found that Rush had acted negligently in hiring Knapp, it expressly stated, in Jury Interrogatory No. 7, that it did *not* find that Rush consciously disregarded the safety of others when it hired Knapp. In so finding, the jury rejected the proposition that Rush, itself, had acted with actual malice. Accordingly, pursuant to R.C. 2315.21, punitive damages against Rush would be appropriate only if Rush authorized, participated in, or ratified malicious conduct by Knapp, its employee.

{¶ 36} Appellants argue that the trial court's second jury instruction with respect to punitive damages against Rush was erroneous because it did not require the jury to find that Rush authorized, participated in, or ratified Knapp's conduct but, instead, merely required the jury to find that Knapp was acting within the course and scope of his employment. Appellee, on the other hand, contends that under Ohio law, an employer is deemed to have authorized or ratified an employee's misconduct that occurred during the course and scope of his employment and may thus be held liable for punitive damages based upon such misconduct. Based on the jury interrogatories, appellee argues that the jury necessarily determined that Knapp's malicious conduct occurred within the course and scope of his employment and that such a determination was sufficient to justify a punitive damages award against Rush.

{¶ 37} A review of Ohio case law regarding an employer's liability for punitive damages based on the acts of an employee reveals conflicting statements of law. Historically, the Supreme Court of Ohio held that an employer is not liable for the malicious acts of its employee simply because the employee was acting within the scope of employment at the time. However, more recently, various Ohio appellate courts have suggested that where an employee acts with malice while in the course and scope of his employment, such conduct is deemed authorized by the employer, thus subjecting the employer to punitive damages. Accordingly, we review the relevant cases in analyzing the validity of the trial court's second jury instruction regarding Rush's liability for punitive damages and the court's ultimate judgment for punitive damages against Rush.

{¶ 38} In *Columbus Ry., Power & Light Co. v. Harrison* (1924), 109 Ohio St. 526, 143 N.E. 32, the Supreme Court of Ohio reviewed a jury verdict in favor of a railway passenger on his claim that a railway motorman had verbally and physically assaulted him, causing severe and permanent injury. The Supreme

Court considered whether the trial court erred by charging the jury that it could return a verdict for punitive damages against the corporate defendant based on the motorman's conduct. The court noted the case of *Lake Shore & Michigan S. Ry. Co. v. Prentice* (1893), 147 U.S. 101, 107, 13 S.Ct. 261, 37 L.Ed. 97, in which the United States Supreme Court held:

> Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive, or malicious intent on the part of the agent.

Thus, in *Prentice*, the United States Supreme Court held that although an employee's actions within the scope of his employment may render the employer liable for compensatory damages, something more than scope of employment is required to render the employer liable for punitive damages arising out of such actions. Accordingly, in *Harrison*, 109 Ohio St. at 531, 143 N.E. 32, the Supreme Court of Ohio held that a corporation cannot be held liable for punitive damages absent proof that the corporate employer acted with "wantonness or oppression or malicious intent."

{¶ 39} Two years later, in *Tracy v. Athens & Pomeroy Coal & Land Co.* (1926), 115 Ohio St. 298, 302–303, 152 N.E. 641, the Supreme Court of Ohio reiterated that a principal cannot be held liable for punitive damages merely because its agent's underlying actions occurred within the scope of the agency:

> Exemplary or punitive damages * * * can only be awarded against one who has participated in the offense. A principal, therefore, though, of course, liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages merely by reason of wanton, oppressive, or malicious intent on the part of the agent. In other words, where that which is tantamount to punitive or exemplary damages is to be recovered by reason of the willful character of the wrongful act, proof of this knowledge and willfulness on the part of the party producing the wrong must be made. The employer cannot be punished for the personal guilt of his servant or agent, unless the employer authorized, ratified, or participated in the wrongdoing.

Based on that standard, the Supreme Court found that the trial court had erred in instructing the jury, as a matter of law, that the willful conduct of an employee was, likewise, willful conduct by the employer for purposes of punitive damages.

{¶ 40} The Supreme Court of Ohio again addressed the issue of awarding punitive damages against an employer for the acts of its employee in *Saberton v.*

*Greenwald* (1946), 146 Ohio St. 414, 32 O.O. 454, 66 N.E.2d 224. There, the plaintiff filed an action against Greenwald, doing business as Greenwald Jewelry Company, to recover damages based on an employee's fraudulent sale of a reconditioned watch as a new watch. The trial court refused to instruct the jury that it could award punitive damages, and the jury rendered a verdict in favor of the plaintiff for the price of the watch. After the court of appeals affirmed, the Supreme Court considered whether the denial of the plaintiff's right to recover punitive damages constituted error. The Supreme Court relied on language from *Tracy* for the general rule that the principal may be held liable for punitive damages only where he had authorized or subsequently adopted his agent's wrongful act or where he participated in the wrongful conduct. With respect to the requirements of authorization and ratification, the Supreme Court noted that although " 'slight acts of ratification will be sufficient to support a claim for exemplary damages against the employer[,] [r]atification * * * is to be inferred only from acts which evince an intention to ratify, and not from acts which may be readily and satisfactorily explained without involving intention to ratify.' " *Saberton*, 146 Ohio St. at 430, 32 O.O. 454, 66 N.E.2d 224, quoting 15 American Jurisprudence, 731, Section 289. Because the record contained evidence from which the jury would have been justified in finding that Greenwald had ratified his employee's actionable conduct by thereafter retaining the employee, the Supreme Court held that the trial court prejudicially erred in refusing to submit the issue of punitive damages to the jury.

{¶ 41} The Supreme Court addressed this issue yet again in *Trauth v. Dunbar* (1983), 5 Ohio St.3d 68, 5 OBR 123, 448 N.E.2d 1368, an action seeking damages for the death of a four-year-old child. Defendant Spartan Management Corporation employed defendant Cecil Dunbar, Jr. to perform general maintenance of an apartment complex and expected Dunbar to use his own vehicle during his work. On April 19, 1979, Dunbar walked to his vehicle from the apartment complex maintenance building, where he had gone to obtain supplies, with the purpose of proceeding to an apartment requiring repair. When Dunbar backed his vehicle out of its parking space, he ran over Jun Ku An, a four-year-old boy, who later died. The trial court denied the defendants' motion for a directed verdict on the issue of punitive damages, and the jury awarded compensatory and punitive damages against both Dunbar and Spartan. Specifically, the jury returned verdicts for $129,857.33 in compensatory damages against both Dunbar and Spartan, $5,000 in punitive damages against Dunbar, and $95,000 in punitive damages against Spartan.

{¶ 42} The court of appeals concluded that the trial court had erred in submitting to the jury the issue of punitive damages as to Spartan and reversed. The appellate court found " 'nothing within the record which tended to prove that

* * * [Spartan] authorized, participated in or ratified the act or acts of its employee alleged to have been the proximate cause of the fatal injuries in this case.'" Id. at 70, 5 OBR 123, 448 N.E.2d 1368, quoting *Trauth v. Dunbar* (Dec. 23, 1981), Hamilton App. No. C–800969, 1981 WL 10179. On review, the Supreme Court stated, "We agree with this finding and the application of the prior holdings of this court. See, *e.g., Columbus Railway, Power & Light Co. v. Harrison* (1924), 109 Ohio St. 526 [143 N.E. 32]." *Trauth,* 5 Ohio St.3d at 70, 5 OBR 123, 448 N.E.2d 1368.

{¶ 43} The evidence that the *Trauth* plaintiff presented to establish a basis for punitive damages against Spartan demonstrated the following:

(1) Spartan's agents shouted at the children to move away from their original safe play area, causing Jun Ku An to move to the mud puddle near the blacktopped area.

(2) Spartan paid Dunbar for the use of his automobile and required him to use it in his employment. Spartan further required Dunbar to drive into the area where Jun Ku An was killed with knowledge that children regularly played there.

(3) Spartan had previously designated the area where Jun Ku An went to play as a fenced in play area. * * *

(4) Spartan had torn down the fence around the area and had converted it into a parking lot without providing any warning to children or to Dunbar.

Id. at 69–70, 5 OBR 123, 448 N.E.2d 1368. Although there was no dispute that Dunbar was within the scope of his employment, the court concluded, "As a matter of law, the facts quoted above * * * do not indicate that Spartan authorized, participated in or ratified Dunbar's conduct. The trial court, therefore, should not have allowed the jury to consider the issue of punitive damages as to Spartan." Id. at 70, 5 OBR 123, 448 N.E.2d 1368.

{¶ 44} Each of the foregoing cases was decided prior to the enactment of R.C. 2315.21. From such cases, it is clear that under the common law, an employer could not be held liable for punitive damages for the acts of its employee merely because the employee undertook actionable conduct while within the scope of his employment. Although an employer could be held liable for compensatory damages as a result of such conduct, the imposition of punitive damages against the employer required proof of something more. To distinguish the employer's liability for punitive damages from its vicarious liability for compensatory damages, the Supreme Court of Ohio determined that punitive damages were warranted only where the employer authorized, participated in, or ratified the employee's actionable conduct. Proof of authorization, participation, or ratification was not satisfied simply because the employee was acting within the scope of his or her employment.

{¶ 45} The Ohio General Assembly's enactment of R.C. 2315.21, as part of Am.Sub.H.B. No. 1, effective January 5, 1988, did not alter the judicially established requirements for imposing punitive damages against an employer for the actions of its employee.[2] Rather, R.C. 2315.21(B)(1) incorporated the Supreme Court of Ohio's prior holdings that punitive damages could be awarded against an employer in a tort action only where either (1) the employer's actions directly demonstrated malice, aggravated or egregious fraud, oppression, or insult or (2) where the employer authorized, participated in, or ratified such actions by its employee.

{¶ 46} The line of cases upon which appellee relies for its argument that, for purposes of punitive damages, an employer is deemed to have authorized conduct by its employee within the course and scope of employment stems from the First District Court of Appeals' opinion in *Fulwiler v. Schneider* (1995), 104 Ohio App.3d 398, 662 N.E.2d 82, in which a nightclub patron alleged an assault by the club's bouncer, William Gardner. The plaintiff filed suit against Gardner, as well as against the nightclub's owners. The plaintiff alleged that Gardner had been acting within the scope of his employment when he committed the intentional assault, that the owners had ratified Gardner's conduct, and that the owners had negligently failed to protect him from Gardner. The jury returned a general verdict in favor of the plaintiff, awarding him $25,000 in compensatory damages. In response to interrogatories, the jury found that (1) Gardner was not acting within the scope of his employment when he assaulted the plaintiff, (2) the owners had ratified Gardner's assault, (3) the owners did not exercise reasonable care to protect the plaintiff from Gardner's violent act, (4) Gardner was liable for punitive damages, (5) the owners were not liable for punitive damages, (6) the plaintiff was not entitled to recover attorney fees from Gardner, and (7) the plaintiff was entitled to recover attorney fees from the owners. The trial court ultimately awarded $25,000 in punitive damages against Gardner and assessed attorney fees of $7,500 against Gardner and the owners.

{¶ 47} On appeal, the plaintiff argued that the trial court had improperly instructed the jury that it had to find that Gardner was acting within the scope of his employment *and* that the owners had ratified Gardner's actions, before it could award punitive damages against the owners. After correctly quoting R.C. 2315.21's requirement that a principal must have authorized, participated in, or ratified its employee's actions before facing liability for punitive damages arising therefrom, the First District stated:

---

2. R.C. 2315.21 did, however, enhance the burden of proof for punitive damages to clear and convincing evidence, rather than the prior preponderance-of-the-evidence standard.

Generally, acts committed within the scope of employment will be authorized, either expressly or impliedly, by the employer. *Combs v. Kobacker Stores, Inc.* (App.1953), 65 Ohio Law Abs. 326, 330 * * *; *Fisher v. Hering* (1948), 88 Ohio App. 107, 110 * * *. In that situation, the doctrine of *respondeat superior* liability will apply and the plaintiff need not prove ratification to hold the employer liable. The plaintiff need prove ratification only where the employee's actions are outside the scope of employment, see *State ex rel. Riley Constr. Co. v. E. Liverpool City School Dist. Bd. of Edn.* (1967), 10 Ohio St.2d 25, 29 * * *; *Bernardo v. Anello* (1988), 61 Ohio App.3d 453, 459 * * *; *Fisher, supra,* at 112 * * *, and if the employer expressly or impliedly ratifies willful and malicious conduct by an employee, an award of punitive damages is proper. *Saberton* * * *, paragraph three of the syllabus.

*Fulwiler,* 104 Ohio App.3d at 406, 662 N.E.2d 82. The court then held that "the trial court erred in instructing the jury that it had to find both that Gardner was acting in the scope of his employment and that [the owners] ratified his actions before it could award punitive damages." Id. Because the record contained evidence from which reasonable minds could conclude that the owners had ratified Gardner's conduct, the court remanded the matter for a new hearing on the owners' liability for punitive damages.

{¶ 48} Based on *Fulwiler,* other Ohio appellate courts have seemingly departed from the long-standing Supreme Court of Ohio jurisprudence regarding the imposition of punitive damages against an employer for the malicious acts of its employees. These courts have held that an employer may be liable for punitive damages based on its employee's actionable conduct, as long as the employee was acting within the scope of his employment, and without any further demonstration of authorization, participation, or ratification by the employer.

{¶ 49} In *Davis v. May Dept. Stores Co.* (Sept. 26, 2001), Summit App. No. 20396, 2001 WL 1148054, the Ninth District Court of Appeals affirmed a punitive damages award against a department store based on the conduct of loss-prevention employees and agents in apprehending, detaining, and questioning a juvenile shoplifting suspect, despite the employees/agents' violation of store policy. The shoplifting suspect and her mother filed a complaint against, inter alia, the department store and the individual loss-prevention employees/agents. After dismissing some claims, the trial court submitted the plaintiffs' claims for false imprisonment, civil assault, battery, and punitive damages to the jury. The jury returned a verdict in favor of the suspect on her false-imprisonment claim against the store and awarded compensatory damages of $12,000 and punitive damages of $200,000. On the remaining claims, including the claims against the individual defendants, the jury found in favor of the defendants.

{¶ 50} On appeal, the store argued that the punitive-damages award was inappropriate because the record contained no evidence that the store had authorized, participated in, or ratified the employees/agents' actions. Finding that a reasonable jury could conclude that the employees/agents' actions had demonstrated a conscious disregard for the suspect's rights that had great probability of causing substantial harm, the court considered whether the store could be liable for punitive damages arising out of those actions.

{¶ 51} Based on *Fulwiler*, the Ninth District Court of Appeals in *Davis* stated that an employer generally authorizes, either explicitly or implicitly, an employee's acts committed within the scope of employment and that, in such a situation, the doctrine of respondeat superior applies. The court also stated that a plaintiff need demonstrate ratification only if the employee was acting outside the scope of his employment. Based on its conclusion that a reasonable jury could find that the employees/agents were acting within the scope of their employment/agency and were acting to facilitate the store's business when they detained, questioned, and searched the suspect, the court found that "the jury could have reasonably determined that [the store] had either explicitly or implicitly authorized the conduct, thereby subjecting [the store] to liability for punitive damages." Id. Alternatively, the court found that a reasonable jury could conclude that the store had ratified one of the employee's actions, based on evidence that the store had placed a written reprimand in the employee's employment file, specifying that the employee should undergo retraining, but did not pursue retraining the employee.

{¶ 52} The First District revisited its *Fulwiler* holding in *Siuda v. Howard*, Hamilton App. No. C–000656, 2002-Ohio-2292, 2002 WL 946188, an appeal from consolidated actions in which former patients and their spouses sued Dr. David Howard, an ophthalmologist, and his employer, Tri–State Eye Care Service, alleging various claims resulting from Dr. Howard's care in performing or recommending surgery for glaucoma and/or cataracts. A jury returned verdicts for punitive damages in favor of two plaintiffs. Specifically, the jury awarded plaintiff Ruth Hughes compensatory damages of $200,000 on her medical-negligence and lack-of-informed consent claims, along with $500,000 in punitive damages against Dr. Howard and $250,000 in punitive damages against Tri–State. The jury awarded plaintiff Lora Maxwell compensatory damages of $250,000 on her medical-negligence claim, along with $500,000 in punitive damages against Dr. Howard and $250,000 in punitive damages against Tri–State.

{¶ 53} The appellate court expressly addressed the propriety of the punitive-damages awards against Tri–State, noting that, pursuant to R.C. 2315.21(B)(1), an employer is not liable for punitive damages unless it authorized, participated in, or ratified its employee's actions. Citing *Fulwiler*, the court stated that when an employee is acting within the scope of his employment, his actions are

generally deemed authorized by his employer, and the doctrine of respondeat superior applies, eliminating the need for a plaintiff to prove ratification. The *Siuda* court found no error in the trial court's refusal of a new trial with respect to the punitive-damages awards against Tri–State "because the evidence supported a finding that Howard was acting within the scope of his employment when he attended to Ruth Hughes and Lora Maxwell."

{¶ 54} Other Ohio appellate courts, including this court, have cited language from *Fulwiler* regarding the need to prove ratification only when the employee was acting outside the scope of employment. However, such cases do not affirm punitive damages awards against employers based exclusively on scope of employment, as appellee urges us to do here. See, e.g., *Anousheh v. Planet Ford, Inc.*, Montgomery App. No. 21960, 2007-Ohio-4543, 2007 WL 2482625, ¶ 35–37 (stating that a reasonable juror could also find that employer took an active hand in the fraudulent sales transaction); *Bardonaro v. Gen. Motors Corp.* (Aug. 4, 2000), Montgomery App. No. 18063, 2000 WL 1062188 (concluding that the employer's subsequent actions, including payment of its employee's legal fees, was sufficient to support a finding that the employer had ratified the employee's conduct); *Groner v. deLevie* (May 1, 2001), Franklin App. No. 00AP–1244, 2001 WL 438701 (affirming summary judgment in favor of employers on claim for punitive damages where reasonable minds could only conclude that the employee acted outside the scope of his employment and where there was no evidence from which reasonable minds could conclude that employers ratified or approved the employee's conduct).

{¶ 55} Here, appellee argues that an award of punitive damages against Rush was proper because the jury found that Knapp had acted with malice during the course and scope of his employment, citing *Fulwiler* and its progeny. Upon closer review, however, we do not find that *Fulwiler* stands for the broad proposition that appellee advances. In the relevant assignment of error, Fulwiler took issue with the trial court's jury instruction, arguing that the court erroneously instructed that, to award punitive damages against the owners, the jury had to find both that the owners had ratified Gardner's actions and that Gardner was acting within the scope of his employment. The appellate court agreed and held that the trial court erred in instructing the jury that it had to find *both* that Gardner was acting in the scope of his employment and that the owners ratified Gardner's actions.

{¶ 56} We agree with the *Fulwiler* court insofar as it held that a plaintiff need not prove both ratification and that the employee was acting within the scope of his employment before punitive damages may be assessed against an employer. In *Fulwiler*, because the jury had found that Gardner was not acting within the scope of his employment, the trial court's instruction compelled the

jury to deny an award of punitive damages against the owners, even though the owners had ratified Gardner's malicious act. The appellate court's holding simply establishes that, because reasonable minds could conclude that the owners had ratified Gardner's action, the fact that Gardner was acting outside the scope of his employment at the time of the assault did not preclude an award of punitive damages against the owners. This is consistent with R.C. 2315.21, which, absent proof of an employer's own malicious conduct, requires that the employer authorize, participate in, or ratify its employee's actionable conduct before facing punitive damages. The issue of whether an employee's commission of a malicious act within the scope of his employment is sufficient to award punitive damages against the employer in the absence of independent evidence that the employer authorized, participated in, or ratified the employee's conduct was simply not before the *Fulwiler* court.

{¶ 57} Moreover, the cases upon which the *Fulwiler* court relied for its statement that respondeat superior liability applies where the employee commits malicious acts within the scope of his employment did not involve punitive damages. While both *Combs v. Kobacker Stores, Inc.* (1953), 65 Ohio Law Abs. 326, 114 N.E.2d 447, and *Fisher v. Hering* (1948), 88 Ohio App. 107, 44 O.O. 79, 97 N.E.2d 553, address the issue of when an employee is acting within the scope of his or her employment, neither case addressed the ramifications of such a finding on a claim for punitive damages because neither case included a claim for punitive damages. Accordingly, in light of the long line of Supreme Court of Ohio cases holding otherwise, we do not find that *Fulwiler* stands for the proposition that, without more, an employee's action within the scope of his employment constitutes an authorized act for which the employer may be held liable for punitive damages.

{¶ 58} Other than evidence regarding whether Knapp was acting within the scope of his employment at the time of the accident, the record contains no evidence that Rush authorized, participated in, or ratified Knapp's conduct. In fact, the record establishes the contrary. In September and October 2001, Rush's policy required a driver who was involved in an accident to immediately contact Rush's dispatch, stay at the scene, have the police contacted, cooperate with the police, and have a police report made. There is no evidence that Rush authorized Knapp's actions, which violated each requirement under the company's policy. Moreover, there is no evidence that Rush subsequently ratified Knapp's actions surrounding the accident. Rush did not learn of the accident until at least the following day, when Smith read a newspaper article about the accident. Smith contacted the Columbus Police Department, ordered Rush dispatchers to call Knapp back to Dayton, and ordered Knapp to submit to an interview with the police detective investigating the accident. The police detective contacted Smith

following Knapp's confession to his involvement in the accident, and Smith testified that Rush immediately discharged Knapp. As the Supreme Court of Ohio has noted, in contrast to an employer who ratifies its employee's conduct by retaining the employee after knowledge of the employee's malicious conduct, " 'the fact that the master discharged the servant on learning of his act may show his disapproval of the servant's conduct and relieve him from liability for exemplary damages.' " *Saberton*, 146 Ohio St. at 431, 32 O.O. 454, 66 N.E.2d 224, quoting 15 American Jurisprudence, 731, Section 289.

{¶ 59} The only evidence of any wrongdoing by Rush related to its alleged failure to appropriately inquire into Knapp's background before hiring him, such evidence forming the basis for appellee's negligent-hiring claim against Rush. While we acknowledge that, in *Harrison*, the Supreme Court of Ohio suggested that proof of negligent hiring may constitute proof of wantonness, oppression, or malicious intent, the jury here expressly rejected a finding that Rush had acted recklessly or in conscious disregard of the rights and safety of others when it hired Knapp. Even where a plaintiff proves a claim of negligent hiring, the plaintiff must establish actual malice before he is entitled to recover punitive damages. See *Stephens v. A–Able Rents Co.* (1995), 101 Ohio App.3d 20, 28, 654 N.E.2d 1315. Here, the jury refused to find that Rush had acted with malice, as defined by *Preston*, with respect to the only allegation of wrongdoing by Rush. Thus, the evidence of Rush's negligence in hiring Knapp is insufficient to support an award of punitive damages against Rush.

{¶ 60} To sum up our discussion of appellants' second and third assignments of error, we find that the record lacked any evidence from which reasonable minds could conclude that Rush acted with malice or that Rush authorized, participated in, or ratified Knapp's conduct. Accordingly, we find that the trial court erred in submitting the issue of punitive damages against Rush to the jury. Moreover, absent evidence that Rush authorized, participated in, or ratified Knapp's malicious conduct, the trial court erred in holding Rush liable for the punitive damages that the jury returned against Knapp. See *Lowe v. Schottenstein Stores Corp.* (Mar. 25, 1987), Montgomery App. No. CA 9599, 1987 WL 8491 ("The imposition of vicarious liability upon an employer for the unlawful acts of its agent or employee does not include the imposition of punitive damages unless the corporation authorized, ratified or participated in the unlawful acts"). Therefore, we sustain appellants' second and third assignments of error.

{¶ 61} Under their fourth assignment of error, appellants argue that the trial court erred by entering judgment in favor of appellee in contravention of Civ.R. 49(B), which provides, "When one or more of the answers [to jury

interrogatories] is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial." Appellants identify the issue presented under their fourth assignment of error as follows: "The trial court committed error prejudicial to appellants by entering judgment for plaintiff without a reduction for the comparative negligence of the decedent."

{¶ 62} Despite their citation of Civ.R. 49(B), appellants do not identify any inconsistency between the jury's general verdict and interrogatory responses. Rather, appellants seem to argue that the jury interrogatories conflict not with the general verdict, but with the trial court's June 2003 judgment entry as prepared by appellee. Appellants assert that the trial court should have either ordered a new trial or entered judgment in accordance with the entry proposed by appellants, which would have reduced the award of compensatory damages by 20 percent, based on the jury's apportionment of negligence to Beavers. Appellee, on the other hand, denies the existence of any inconsistency and argues that appellants were not entitled to a reduction of compensatory damages because the jury found that Knapp had acted with actual malice.

{¶ 63} In *Schellhouse v. Norfolk & W. Ry. Co.* (1991), 61 Ohio St.3d 520, 525, 575 N.E.2d 453, the Supreme Court of Ohio held that, "in a civil action for tort or wrongful death, a finding by the jury that a plaintiff (or plaintiff's decedent) was comparatively negligent will not defeat or diminish the recovery of damages where the defendant's intentional tort, committed with actual malice, proximately caused the injury." See also *Wightman*, 94 Ohio App.3d at 398, 640 N.E.2d 1160 (contributory negligence not available as a defense to a negligence action where defendant acted with actual malice); *Young v. Univ. of Akron*, Franklin App. No. 04AP–318, 2004-Ohio-6720, 2004 WL 2892575 (contributory and comparative negligence are not defenses to a reckless or intentional tort); *Brown v. Consol. Rail Corp.* (Oct. 11, 1991), Erie App. No. E–90–35, 1991 WL 253917, citing *Schellhouse* ("[a] finding of actual malice negates a set-off for damages under Ohio's comparative negligence law").

{¶ 64} Here, the jury expressly found that Knapp had engaged in reckless conduct that proximately caused Beavers's death and also found Knapp liable for punitive damages. The trial court's instructions properly required the jury to determine, by clear and convincing evidence, that Knapp had acted with actual malice before awarding punitive damages against him. A jury is presumed to follow the instructions given it by the court. *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237. Thus, we must presume that the jury concluded that Knapp not only acted recklessly, but also acted with actual malice.

{¶ 65} In *Pavlides v. Niles Gun Show, Inc.* (1996), 112 Ohio App.3d 609, 679 N.E.2d 728, the Fifth District Court of Appeals addressed an argument similar to appellants' argument here. In that case, the jury returned a verdict in favor of the plaintiff for both compensatory and punitive damages. In responses to interrogatories, the jury found that the defendant was negligent and had acted with conscious disregard of the plaintiff's rights, but also found that the plaintiff was 50 percent negligent. The trial court entered judgment in accordance with the jury verdict, and the defendant appealed, arguing that it was entitled to a reduction of compensatory damages based on the jury's finding that the plaintiff was 50 percent negligent. The court of appeals rejected the defendant's argument, stating: "The jury made a finding of actual malice on the part of [the defendant]. A finding of actual malice negates a setoff for damages under Ohio's comparative negligence law." Id. at 618, 679 N.E.2d 728, citing *Wightman,* 94 Ohio App.3d at 398, 640 N.E.2d 1160.

{¶ 66} Here, because the jury necessarily found that Knapp had acted with actual malice, a finding that negates a set-off for damages under Ohio's comparative negligence law, we find no error in the trial court's refusal to reduce the award of compensatory damages based on the jury's apportionment of negligence. Therefore, we overrule appellants' fourth assignment of error.

{¶ 67} In their fifth assignment of error, appellants argue that the trial court erred by excluding evidence of Beavers's prior operating-a-motor-vehicle-while-intoxicated ("OMVI") convictions and participation in an alcohol-rehabilitation program. Appellants contend that they sought admission of that evidence to demonstrate that Beavers knew the effects of alcohol and drug consumption when he decided to operate his motorcycle on October 9, 2001. Coupled with evidence that Beavers's autopsy revealed a .09 blood alcohol level and recreational levels of cocaine, appellants contend that that evidence was important to establish that Beavers's operation of the motorcycle was reckless. In response, appellee argues both that appellants forfeited any argument regarding the trial court's exclusion of Beavers's prior convictions and rehabilitation and that the trial court properly precluded presentation of such evidence.

{¶ 68} On May 13, 2003, appellee filed a motion in limine to exclude any evidence of Beavers's two prior OMVI convictions, from 1992 and 1997, and of Beavers's prior participation in an alcohol-rehabilitation program. The trial court addressed appellee's motion in limine on the record before the commencement of trial. After questioning whether anyone is unaware of the dangers of drinking and driving, the court "tentatively" excluded the evidence, reminding the parties that it was simply ruling on a motion in limine. Earlier, the trial court had cautioned the parties: "Any motion in limine * * * is a preliminary, tentative indication of how the court will rule when the issue—if and when the issue comes

up in the context of trial. * * * They can't be considered final rulings for purposes of the actual introduction of the evidence proffered or for purposes of appeal."

{¶ 69} With respect to a party's ability to appeal the admissibility of evidence subject to a ruling on a motion in limine, the Supreme Court of Ohio has held: "At trial it is incumbent upon a [party], who has been temporarily restricted from introducing evidence by virtue of a motion *in limine,* to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." *State v. Grubb* (1986), 28 Ohio St.3d 199, 28 OBR 285, 503 N.E.2d 142, paragraph two of the syllabus. " 'An appellate court need not review the propriety of [a decision on a motion in limine] unless the claimed error is preserved by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed at trial.' " Id. at 203, 28 OBR 285, 503 N.E.2d 142, quoting Palmer, Ohio Rules of Evidence Rules Manual (1984) 446. Absent a proffer of the disputed evidence when the issue is actually reached during trial, even a renewal of a motion in limine on the record prior to opening statements does not preserve the claimed error. See *Jones v. Capco,* Cuyahoga App. No. 81748, 2003-Ohio-5807, 2003 WL 22455243, ¶ 8.

{¶ 70} Appellants do not identify any place in the record, during the presentation of evidence, where they proffered evidence of Beavers's prior OMVI convictions and alcohol rehabilitation for the trial court to issue a final ruling regarding the admissibility of such evidence. Although appellants' counsel asked the court to take judicial notice that "the more alcohol one consumes, the more likely it is that he or she is impaired by alcohol intoxication," appellants' counsel neither proffered evidence of Beavers's prior convictions or alcohol rehabilitation nor requested that the trial court reconsider its ruling on the motion in limine. Appellants' failure to preserve this issue by proffering the evidence during trial constitutes a forfeiture of any right to object to the evidentiary issue on appeal. See *Grubb,* 28 Ohio St.3d at 203, 28 OBR 285, 503 N.E.2d 142; *Sutherland v. Nationwide Gen. Ins. Co.* (1994), 96 Ohio App.3d 793, 812, 645 N.E.2d 1338. Because appellants forfeited their right to object to the admissibility of Beavers's prior alcohol-related convictions and rehabilitation on appeal, we overrule appellants' fifth assignment of error.

{¶ 71} In their sixth assignment of error, appellants argue that the trial court erred by permitting the jury to consider whether to award attorney fees where punitive damages were not recoverable. Although litigants are generally responsible for their own attorney fees, a court may award attorney fees as an element of compensatory damages where punitive damages are warranted. *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 558, 644

N.E.2d 397, citing *Columbus Fin., Inc. v. Howard* (1975), 42 Ohio St.2d 178, 183, 71 O.O.2d 174, 327 N.E.2d 654. Having determined, in our discussion of appellants' first assignment of error, that the trial court appropriately submitted the issue of punitive damages to the jury and that the evidence supported an award of punitive damages as to Knapp, we overrule appellants' sixth assignment of error.

{¶ 72} By their seventh assignment of error, appellants argue that the trial court lacked jurisdiction to award attorney fees or expenses after its June 30, 2003 judgment entry and after appellants filed their first notice of appeal. Appellants contend that because the June 30, 2003 judgment entry did not journalize an attorney fees award, the trial court could not later award such fees because Civ.R. 54(C) requires that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled." Additionally, appellants argue that their first notice of appeal divested the trial court of jurisdiction to take further action. We disagree.

{¶ 73} Recently, the Supreme Court of Ohio addressed a trial court's authority to determine attorney fees after entering judgment on other claims in an action, holding that "[w]hen attorney fees are requested in the original pleadings, a party may wait until after the entry of a judgment on the other claims in the case to file its motion for attorney fees." *Internatl. Bhd. of Electrical Workers, Local Union No. 8 v. Vaughn Industries, L.L.C.,* 116 Ohio St.3d 335, 2007-Ohio-6439, 879 N.E.2d 187, paragraph one of the syllabus. The Supreme Court also held, at paragraph two of the syllabus, that "[w]hen attorney fees are requested in the original pleadings, an order that does not dispose of the attorney-fee claim and does not include, pursuant to Civ.R. 54(B), an express determination that there is no just reason for delay, is not a final, appealable order."

{¶ 74} Here, appellee's second amended complaint set forth claims for punitive damages, proof of which gives rise to an entitlement to attorney fees. See *Zoppo*, 71 Ohio St.3d at 558, 644 N.E.2d 397. At all times, the parties and the trial court were well aware of appellee's attorney fees claim, which appellee specifically argued at trial. The trial court instructed the jury and submitted a jury interrogatory regarding appellee's entitlement to attorney fees. Moreover, the jury undisputedly concluded that appellee was entitled to recover attorney fees. Based on the *Vaughn Industries,* 116 Ohio St.3d 335, 2007-Ohio-6439, 879 N.E.2d 187, syllabus, we find that the June 30, 2003 judgment entry did not prohibit the trial court from subsequently considering the amount of attorney fees to which appellee was entitled.

{¶ 75} While we agree with appellants that the filing of a notice of appeal generally divests the trial court of jurisdiction to act except over issues not

inconsistent with the appellate court's jurisdiction, appellate jurisdiction is limited to review of final orders or judgments that are appealable. *Klein v. Bendix–Westinghouse Automotive Air Brake Co.* (1968), 13 Ohio St.2d 85, 86, 42 O.O.2d 283, 234 N.E.2d 587; *Ford Motor Credit Co. v. Ryan & Ryan, Inc.*, Franklin App. No. 06AP–1239, 2007-Ohio-5658, 2007 WL 3072634, ¶ 5. To be final and appealable, a court order must satisfy the requirements of R.C. 2505.02. If the action involves multiple claims and the order does not enter judgment on all of the claims, the order must also satisfy Civ.R. 54(B) by including express language that there is no just reason for delay. *Vaughn Industries*, 116 Ohio St.3d 335, 2007-Ohio-6439, 879 N.E.2d 187, at ¶ 7, citing *State ex rel. Scruggs v. Sadler*, 97 Ohio St.3d 78, 2002-Ohio-5315, 776 N.E.2d 101, ¶ 5–7.

{¶ 76} Here, although the trial court submitted the issue of attorney fees to the jury and although the jury expressly determined that appellee was entitled to recover attorney fees, the June 30, 2003 judgment entry did not determine the amount of attorney fees to which appellee was entitled. Thus, the judgment entry did not enter judgment on all claims before the trial court. Although stamped "final appealable order," the judgment entry did not contain Civ.R. 54(B) language finding no just reason for delay. A trial court may not bypass the requirement to include Civ.R. 54(B) language by stating that its order is final and appealable. *Vaughn Industries*, 116 Ohio St.3d 335, 2007-Ohio-6439, 879 N.E.2d 187, at ¶ 8. Because it neither entered judgment on all of the claims before the trial court nor contained Civ.R. 54(B) language, the June 30, 2003 judgment entry was not a final, appealable order. Appellants' filing of their first notice of appeal, prior to the trial court's issuance of a final, appealable order, was premature, and this court lacked jurisdiction to consider appellants' first appeal. "[A] premature notice of appeal * * * does not divest the trial court of jurisdiction to proceed because the appeal has not yet been perfected." *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516, ¶ 14. Therefore, the trial court retained jurisdiction to consider the issue of attorney fees.

{¶ 77} Even if appellants' first notice of appeal had divested the trial court of jurisdiction, this court dismissed appellants' first appeal sua sponte because the trial court had not yet determined appellee's attorney-fee award. We remanded the matter to the trial court for that very purpose prior to the magistrate's decision on attorney fees, the trial court's decision overruling appellants' objections regarding attorney fees, or the trial court's entry of judgment for the attorney fees. As this court noted in a matter involving a Civ.R. 60(B) motion filed after a notice of appeal, "[j]urisdiction may be conferred on the trial court * * * through an order by the reviewing court remanding the matter for consideration." *Bank of New York v. Bartmas*, Franklin App. No.

04AP–1011, 2005-Ohio-6099, 2005 WL 3073377, ¶ 14. Thus, at the very least, our remand conferred jurisdiction upon the trial court to enter judgment on appellee's claim for attorney fees. Accordingly, we overrule appellants' seventh assignment of error.

{¶ 78} We now turn to the eighth assignment of error, by which appellants contend that the trial court erred by including within the attorney fee award certain fees for probate matters concerning control of Beavers's estate. Appellants' argument under this assignment of error also addresses the trial court's award of fees and expenses for work completed after the June 2003 judgment entry. We review an award of attorney fees for an abuse of discretion. See *Abbott v. Marshalls of MA, Inc.*, Cuyahoga App. No. 87860, 2007-Ohio-1146, 2007 WL 764545, ¶ 48.

{¶ 79} Appellee argues that the trial court appropriately included the probate fees because those fees would not have been incurred but for the accident. At the attorney fees hearing, appellee's counsel testified that Beavers's mother contacted his firm in October 2001. Separate probate counsel filed the appropriate probate proceedings, and Beavers's mother was appointed as the administrator of the estate. But for the wrongful-death action, there would have been no probate. After appellee's counsel began work on the wrongful-death action, he learned that Beavers's ex-wife was attempting to be appointed administrator of Beavers's estate. By that time, appellee's counsel had done substantial investigation, drafting, and discovery on the wrongful-death case. Although appellee's counsel needed clarification as to the identity of the administrator, he testified that he had an obligation to continue to prosecute this case even with the possibility that Beavers's mother could be replaced as administrator. Ultimately, Beavers' mother and ex-wife agreed to become co-administrators of the estate and agreed to appellee's counsel handling this action.

{¶ 80} The only probate-related fees included in the submitted billing statements involved issues that appellee's counsel thought related to the wrongful-death litigation with which he would be involved. Separate probate counsel otherwise handled all probate matters, and the trial court did not award fees incurred by such probate counsel. Based on the testimony of appellee's counsel, we find that the trial court's inclusion of the probate-related fees in its attorney fees award did not constitute an abuse of discretion. Neither do we find that the trial court abused its discretion in awarding attorney fees for work completed by appellee's counsel between the June 2003 judgment of the trial court and the attorney-fees hearing, upon finding such fees necessary and reasonable. Therefore, we overrule appellants' eighth assignment of error.

{¶ 81} In their ninth and final assignment of error, appellants argue that the trial court violated a permanent injunction issued in Knapp's bankruptcy proceedings with respect to the judgment for fees and expenses against Knapp. On January 15, 2004, the United States Bankruptcy Court for the Southern District of Ohio issued a stipulation and agreed order modifying the automatic stay imposed by Section 362, Title 11, U.S.Code in Knapp's bankruptcy proceedings. The bankruptcy court modified the automatic stay for a limited purpose:

(a) allowing the Franklin County Court of Common Pleas to conduct an evidentiary hearing in [this case], and to render a decision determining the amount of attorney fees, expenses and costs to be awarded to the Estate of Robert L. Beavers, Jr.; and

(b) allowing the Estate of Robert L. Beavers, Jr., by and through its administrator and counsel, to litigate its claims against Auto–Owners Insurance Company and AIG, or against any of their affiliates or subsidiaries, in an effort to establish coverage for the judgment rendered in [this case] and to take any steps necessary to satisfy all or a portion of the judgment through the insurers.

Appellants argue that while the bankruptcy court's order permitted the trial court to conduct an attorney-fees hearing, it did not authorize the entry of judgment against Knapp. Thus, appellants contend that any award of attorney fees and expenses against Knapp was improper. In response, appellee acknowledges that it may not collect the attorney-fees award from Knapp because of his discharge in bankruptcy, but argues that it was necessary to enter such a judgment so that appellee could attempt to collect from Rush or from appellants' insurers.

{¶ 82} In *Nationwide Gen. Ins. Co. v. Brown* (1965), 4 Ohio App.2d 419, 31 O.O.2d 358, 208 N.E.2d 767, the Fourth District Court of Appeals affirmed the trial court's entry of a tort judgment against a defendant who had been discharged in bankruptcy and who had listed the plaintiff's claim in his schedule of debts with the bankruptcy court. According to the Fourth District, "[n]otwithstanding the defense of discharge in bankruptcy, the trial court properly permitted the case to go to judgment for the reason that the defense of bankruptcy in a tort action does not permit it to be interposed to prevent a judgment on the merits, but only operates to prevent execution against the defendant on the judgment." Id. Additionally, "an insurance company can be held liable under its contract for a judgment against its insured notwithstanding the discharge in bankruptcy of the insured." *Fisher v. Lewis* (1988), 57 Ohio App.3d 116, 117, 567 N.E.2d 276. See also *Kutza v. Parker* (1962), 115 Ohio App. 313, 316, 20 O.O.2d 403, 185 N.E.2d 53 ("it is essential that courts permit the rendition of a judgment against the bankrupt, for the reason that the insurance company is liable under its contract notwithstanding the discharge in bankruptcy of the insured; and to

fix the extent of the insurance liability, if any, the tort action must be determined on its merits"). Accordingly, we find no error in the trial court's entry of judgment regarding attorney fees and expenses, so that appellee could attempt to recover those fees from sources other than Knapp, and we overrule appellants' ninth assignment of error.

{¶ 83} For the foregoing reasons, we overrule appellants' first, fourth, fifth, sixth, seventh, eighth, and ninth assignments of error, and we sustain appellants' second and third assignments of error. With the exception of the trial court's entry of punitive damages against Rush, we affirm the judgment of the Franklin County Court of Common Pleas. We reverse only the trial court's entry of judgment against Rush for punitive damages and remand this matter with instructions for the trial court to enter judgment in favor of Rush on appellee's claim for punitive damages.

Judgment affirmed in part<br>and reversed in part,<br>and cause remanded.

BROWN and KLATT, JJ., concur.